Davis et al. *vs.* Anderson et al.

2d. That the words "sue and be sued, &c, in courts of record," in the charter of the defendant, are not words of grant.

3d. That they are merely affirmative of the common law.

4th. That the acts of 1840 and 1843, defining the liability of railroad companies, are remedial and constitutional.

And lastly, That the presumption is always in favor of the constitutionality of a law, and that the plaintiff is entitled to the judgment of this court, reversing the judgment of the Superior Court of Chatham county, and dismissing the certiorari granted by that court in this case.

ROBERT M. CHARLTON, representing COHEN, for defendants in error.

No. 24.—JOHN E. DAVIS, Sheriff, JOSEPH JONES, CHARLES WEST, ROSWELL KING, Trustees, &c., and EDWARD STILES, plaintiffs in error, *vs.* GEORGE W. ANDERSON and BROTHER, defendants in error.

Although a security on appeal is interested, by reason of his suretyship, and therefore incompetent as a witness for the appellant,—yet his competency may be restored, by the substitution of another security in his place, under an order of the court, taken for that purpose, which, for the advancement of justice, the court ought to permit upon application.   The refusal to allow it is error.

The motion for substitution being made by the parties, for their benefit, they could not take advantage of it :  And the order of the court, entered upon the minutes, would make the record sufficiently intelligible.

A mortgage would be obnoxious to the provisions of the act of 1818(*a*) and void, if used as an instrument of fraud, for the purpose of securing to the mortgagor a *secret* trust, or benefit, within the intent and meaning of said act.

But a mortgage, executed by a debtor, in insolvent circumstances, to a creditor, to

(*a*) For the statute of 1818, see *Eastman and Philbrick* vs. *McAlpin.*   Ante.

secure the payment of a *bona fide* pre-existing debt, is not *per se* fraudulent, as against creditors.

A mortgage in Georgia, is nothing more than a *security* for the payment of a debt; and the title to the mortgaged property remains in the mortgagor, until foreclosure and sale, in the manner pointed out by statute.

This was a bill in equity, tried before Judge Fleming, in Chatham Superior Court, January Term, 1846. The bill was instituted at the instance of the defendants in error against the plaintiffs, charging that on or about the 2d day of June, 1840, the complainants advanced to Edward Stiles, at his request, the sum of $2,125 86, and took his note for the same, payable on the first day of December thereafterwards: that on the 30th of that month he paid them on said note $592 01, and subsequently on the 20th of February, 1841, the further sum of $89 75, leaving still due and unpaid the sum of $1,475 26; that the complainants, having ascertained that said Edward was greatly embarrassed in his circumstances, and believing him to be insolvent and unable to pay his debts, instituted suit against him for said balance in the Inferior Court of said county of Chatham, returnable to May Term, 1842, of said Inferior Court; and at the January Term, 1843, recovered judgment against him therefor, with interest and cost, and from which execution was issued. That about the 19th of April, 1842, and but a few days after the commencement of said suit by the complainants, the said Edward being in failing circumstances, and unable to pay his debts, as they believed, executed to Joseph Jones, Charles West, and Roswell King, junior, (three of the plaintiffs in error,) as trustees of Caroline Clifford Stiles, a mortgage of nine negro slaves, to secure the payment of three notes, bearing date the 1st of January, 1836, and payable respectively at one, two, and three years after date thereof, and the interest, which up to that time had accrued, being debts long antecedent to, and not contracted at the time of the execution of said mortgage. That said mortgage was executed in the county of Chatham aforesaid, and having been made and executed by the said mortgagor to secure debts long antecedent, and at a time when he was unable to pay his debts, with interest, *to prefer the said mortgagees, and to exclude the other creditors of the said mortgagor from an equal share or portion of the estate so assigned, transferred and mortgaged*, and said mortgage containing a condition *that the surplus of moneys arising from the sale of said negroes, after payment of said notes, amounting to $798 98 principal, besides interest and charges, should be returned to the said mortgagor, being a trust in favor of him, the said Edward*, was under the laws of Georgia aforesaid null and void, and considered in law and equity as fraudulent against creditors. Notwithstanding which, the said trustees caused the said mortgage to be foreclosed at the February Term, 1843, of the Superior Court of the said county of Chatham, and execution to be issued thereon, and required the said John E. Davis, sheriff of said county, (one of the plaintiffs in error,) to sell said nine negroes, so illegally mortgaged, under the execution issuing from said foreclosure in favor of said mortgagees, and to pay over the proceeds of said sale to said mortgagees, the trustees aforesaid; and the said sheriff proceeded to sell said slaves, and holds in his hands, as sheriff, a large sum of money, being such proceeds, which are claimed under the aforesaid illegal mortgage, so foreclosed as aforesaid. That the complainants had requested

12

said trustees to desist from their said claim, founded upon said illegal mortgage, and to permit the complainants, with other judgment creditors of the said Edward, to share pro rata the said proceeds, and to permit the said John E. Davis, sheriff as aforesaid, to retain said proceeds, to be applied to the payment of said judgments, &c. ; and concluded with a prayer for injunction, and for a decree directing said proceeds to be paid over to the judgment creditors, wholly disregarding the claims set up under the said mortgage, and for general relief, &c.

The plaintiffs in error, who were defendants in said bill, answered, admitting the sale of the negroes under the mortgage fi. fa., and the proceeds of the sale held up in the hands of the sheriff, except so much thereof as was necessary to pay costs, and an execution older than the mortgage ; the balance left on hand being $1,017 73. Divers executions against said Edward Stiles, besides the mortgage fi. fa., were in the hands of the said sheriff, unsatisfied ; and it appeared that he had no other property at the time of the levy, except the mortgaged negroes.

The said Edward Stiles, answering the bill, stated that he had mortgaged to the defendants in error, to secure the payment of their said debt, a tract of land in the county of Bryan, of five hundred acres first quality inland swamp, called "Crow-lane," with the improvements thereon, worth, as he believed, three thousand dollars at the time of giving the mortgage in 1841 ; and at the time of his answer it was worth $2,000. That said mortgage had never been foreclosed, and remained of force and effect, and was the oldest lien against him. That sometime in the year 1836 he purchased a plantation called "Selina," in the county of Bryan, from said trustees, and gave a mortgage upon it to secure the purchase-money. In April, 1842, the said Edward, being desirous of disposing of said plantation, proposed to said trustees, or their agent, to give up the mortgage thereon, and that he would substitute in its stead a mortgage on the nine negro slaves referred to in said bill, the amount of the notes and the interest accrued thereon being then nearly twelve hundred dollars, which was accepted, and the mortgage on the negroes aforesaid was executed and delivered. That at the time of executing said mortgage he was solvent, and able to pay his debts with his property at a fair valuation. That said mortgage was executed in good faith, and with no view of excluding any one of his creditors from a fair and just participation of his estate, which he believed to be ample for the payment of his debts at a fair valuation ; nor did he have any view of securing to himself any benefit by way of trust, to the exclusion of his other creditors, for any surplus remaining after satisfaction of said mortgage to the trustees. That he had no intention to prefer one of his creditors to another, or to reserve any trust to himself, to the exclusion of his creditors.

The answer of the trustees corroborated that of the said Edward Stiles as to the mortgage on the place called Selina, and the consideration therefor, and the circumstances under which the same was given, and the substitution, in its stead, of the mortgage upon the nine slaves, and the reasons therefor : They stated that the whole matter on the part of the trustees was conducted by the Reverend Joseph C. Stiles, the husband and father of their cestui que trusts, who, they believed, had no design whatever to defraud any of the creditors of the said Edward Stiles in the said transaction ; they had no knowledge at the time of the

execution of the mortgage on the slaves, that the said Edward Stiles was in failing circumstances. They denied the fraudulent trust charged in the bill, and insisted that the condition embraced in the mortgage, which entitled said Edward to any surplus, was not such a trust as was contemplated by the statute, because without such condition the said Edward would have been entitled by law to any such surplus.

Upon the trial of said bill in the court below, the solicitors for the plaintiffs in error offered Benjamin Edward Stiles as a witness, who was objected to on the ground of interest; which objection being overruled, and the witness examined, it was subsequently discovered that the said witness was a surety of the plaintiffs in error on their appeal bond in the case, and the objection was again renewed on this ground :—their counsel contended that the objection came too late, which being overruled by the court, they moved to substitute another surety in the place of the witness, but the presiding judge decided that the appeal bond could not be altered for that purpose; that it would not then be the bond which had been filed, and the appeal would be filed without bond within the time prescribed by law. Whereupon the counsel for the plaintiffs in error excepted.

The counsel for the plaintiffs in error then submitted to the court that a mortgage was not such an assignment, transfer, or conveyance in trust as was intended and embraced, under and by the provisions of the act of Georgia of 1818, to prevent fraudulent conveyances, to deprive creditors from an equal distribution of an insolvent's estate, and that under the laws of Georgia, a mortgage was but a security for a debt, and did not change the ownership of the property : And the presiding judge decided, and so charged the jury, that a mortgage was such an instrument as was embraced under the said act, if made under the circumstances stated in said act, to bring it within its operation. To which the counsel for the plaintiffs in error excepted.

The counsel for the plaintiffs in error then submitted to the court, that if a mortgage was an instrument embraced under the act of 1818, it could only be so, when made by an insolvent to secure an antecedent debt, under the apprehension and in expectation of immediately winding up, and with the intent and motive to give a fraudulent preference; and the said court decided, and so charged the jury, that if the party was insolvent at the time the mortgage was made, it was within the act, although neither the mortgagor nor mortgagee knew of such insolvency at the time ; and although they did not act under the motive or with the intent to give a fraudulent preference, and although the mortgagor was wound up by executions twelve months after the date of the mortgage, provided that the jury should be satisfied that the mortgage was voluntary, and not forced by the vigilant creditor. To which the counsel for the plaintiffs in error excepted.

In behalf of the plaintiffs in error it was proved on the said trial that in 1836 the said trustees sold to the said Eward Stiles a tract of land in Bryan county, called Selina, for ($800) eight hundred dollars, and took three promissory notes, bearing interest, in payment ; and to secure which notes the said trustees took a mortgage from the said Edward Stiles, the vendee, on the said Selina plantation ; that in the same year the said Edward Stiles exchanged the said plantation for another with Alexander Stephen, who had knowledge of the mortgage, and under an agreement by the said

Stiles to procure the removal and cancellation of said mortgage; that in April, 1842, upon the arrival of the said Joseph C. Stiles into Georgia from Kentucky, he being the husband and father of the *cestui que trusts* of the Selina plantation, the said Edward Stiles arranged with him, by the consent of the said trustees, to substitute a new mortgage upon nine slaves, to secure the said notes and interest, in the place of the mortgage on Selina, which new mortgage being taken, the old mortgage on Selina was given up to the said Edward Stiles; and the counsel for the plaintiffs in error thereupon submitted to the court that, under these facts, the latter mortgage on the negroes could not be within the provisions of the act of 1818, even admitting the insolvency of the said Edward Stiles at the time, because the relinquishment of the old mortgage was a present good and valuable consideration for the new; and the said court decided, and so charged the jury, that the new mortgage was for the security of the notes, and the interest which had accrued from 1836 to 1842, when the mortgage was given; that the interest was a sum greater than the value of the Selina plantation and mortgage on it; and that so far as the new mortgage was given to secure the interest, it was within the statute, and so far void; and that being void in part, it was, by the act, void altogether. Whereupon the counsel for the plaintiffs in error excepted.

Upon these several exceptions the error was assigned.

L. S. De Lyon, for plaintiffs in error.

In compliance with the rule of the Supreme Court, the counsel for the plaintiffs in error, furnish a note of the points or questions intended to be made by them.

1st. The plaintiffs in error maintain that the court erred, in allowing the objection to the witness, Benjamin Edward Stiles, on the ground of his being a security on the appeal bond; because, they say, that having been put upon his *voire dire*, and then sworn in chief, he could not afterwards be objected to, on proof of specific grounds of interest.—*Greenleaf Evid.* 470, 471.

2d. That the court erred, in refusing to allow other security to be substituted.—*Greenleaf Evid.* 477; 1 *Phil. Evid.* 136, 2 *Cow. notes,* 270, and cases there cited; 3 *Wend.* 376; 3 *Cow.* 257; 2 *Hawks.* 336; 8 *John. Rep.* 407.

3d. That a mortgage is not such a conveyance as is embraced within the act of 1818.

1st. Because the equity of redemption reserved to the mortgagor, is not such a trust as is contemplated by the statute. It is at all times open to his creditors, who may redeem or levy upon it.—2 *Kent Com.* 535-6, n.

2d. Because it is but a conditional conveyance, the mortgagor in Georgia remaining the owner of the property, and the mortgage considered only as a security for the debt.—1 *Story.* 351, 360; *Georgia Decisions,* 76.

3d. In England, the estate becomes absolute in the mortgagee, upon condition broken. Not so in Georgia. The mortgagor, here, is only divested by judicial process —4 *McCord. Rep.* 336. This is expressly provided in New York and South Carolina by statutes.—2 *Paige,* 592; *Rice's Eq. Rep.* 383.

4th. The plaintiffs in error will further maintain, that if a mortgage be embraced by the act, this case is not within it.

1st. Because *indebted,* in the act, *means insolvent.*

This construction is authorized by the construction of other acts, *in pari materia:* for example, the statute 13 *Eliz.; Newl. on Contracts,* 384-85.

What, then, is technical insolvency?—3 *Cranch Rep.* 90, 91; see 1 *Peters S. C.* 438, 439. When, then, may a mortgage be embraced? When made by an insolvent, in contemplation of an immediate winding up, with intent to give a fraudu-

Davis et al. *vs.* Anderson et al.

lent preference, (1 *Spear's Eq.* 554,) and it must be voluntary.—*Douglass*, 88, 92; 1 *Wash. Cir. Co. Rep.* 34–5 ; *American Jurist*, 1 vol. 197, do. 9.

2d. Because the plaintiffs in error, the trustees, had an equitable lien on Selina plantation, for the purchase-money, in addition to which they took a mortgage on Selina. This mortgage did not extinguish the equitable lien, but made that a legal claim, which before was only equitable.—*Story's Eq.* ; 15 *Vesey*, 341, 16; *Vesey*, 278, 280 ; *Sugden on Vendors*, 386–87.

5th. This equitable lien would follow the Selina plantation.

The surrender of this lien, and the mortgage on Selina, which went to the benefit of Stiles' creditors, for a specific lien on the negroes in the new mortgage, and a specific lien is always prefered to a general lien.—*Story*. 402–3, *n.* 1 ; 3 *Dess. Rep* 71, *n.* 1 ; 1 *Paige*, 130, 3 ; 2 *Paige*, 590, 26.

The original agreement, between the vendors and vendee of the Selina plantation, to secure the purchase-money, will be enforced by the court, whether the security was executed or not. Equity will consider that as done, which ought to have been done.—1 *Bailey's Eq. Rep.* 223, *Alxander* vs. *Heriot*.

The fund being in court, a court of equity will, under such an agreement, even against creditors, decree it to be a specific lien.—3 *Vesey, jr.* 573, 582.

When the equities are equal, the maxim is *qui priori est, in tempore, potior est in jure.*

But in this case, the equity of the plaintiffs in error is clearly superior. All which is respectfully submitted.

THOMAS E. LLOYD, for the defendants in error.

Upon the trial of the above case, Benjamin E. Stiles was offered as a witness for the defendants, and objected to on behalf of complainants' solicitors on the ground of interest, which objection was overruled ; the defendants' solicitors stating that the witness was not interested. Subsequently, during the course of the trial, it was discovered that the witness was the security of the defendants, on the appeal bond, and the objection was renewed, and the testimony of the witness ruled out, the motion being resisted by the defendants' solicitors on the ground that the objection came too late.

The defendants then moved to amend the appeal bond by striking out the name of Benjamin E. Stiles, and substituting another in his place as security ; thus to render him competent as a witness, which motion was refused by the court.

The exceptions taken to the decision of his Honor Judge FLEMING on these points form the first ground of error complained of.

The testimony of Stiles was inadmissible on the ground of his interest, having by his bond obligated himself to pay the eventual condemnation money. He was likewise liable for costs and also damages, should the jury have considered the appeal frivolous and intended for delay. It was a certain, direct and positive interest depending upon the result of the decree and judgment which was to be effected by his own testimony.

His liability for costs was a sufficient disqualification. Upon this point the authorities found in text books and reports are unanimous, to a degree remarkable in legal questions, and sustain the objection to the competency of a witness on this ground, even though he be an executor, trustee or officer of a corporation, with a remedy for reimbursement out of the public or trust funds.—1 *Greenleaf on Ev.* p. 447; 1 *Stra.* 548 ; 5 *East*. 7 ; 1 *Doug.* 139; *Gresly Eq. Ev.* 242–3–4; 16 *Mass.* 118, 121 ; 20 *John.* 142 ; 1 *Phillips on Ev.* p. 45 ; 1 *Starkie*, 136 ; 2 *Smith's L. C.* p. 63 ; 19 *Vesey*, 434.

It may then be considered as settled that Stiles was an incompetent witness. Did the objection come too late ?

It is conceded that under the old rule of law the objection to a witness must have been taken upon the *voire dire* before examination, and that after discovered interest was no ground of objection ; but this rule was shaken, if not destroyed, by the

case of *Turner* vs. *Pearte,* (1 *T. R.*) and it may be safely laid down as the modern rule :

That a witness may be objected to on the ground of interest whenever, during the course of the trial, it appears that he is interested.—1 *Greenleaf on Ev.* p. 467 ; 1 *Starkie,* 124 ; 1 *Phillips,* 96 ; 13 *Mass.* 381 ; 2 *Camp.* 14 ; 6 *John.* 537 ; 1 *Esp.* 37.

But farther let us look to the reason and spirit of the rule, by which a party was compelled to examine a witness upon his *voire dire* before he was examined in chief.

It is said (*Greenleaf on Ev.* p. 467) that a party shall not lie by, and " see if the testimony of an interested witness makes for or against him, and then object, if he find it unfavorable."

The complainants' solicitors objected to this witness before he was put upon his examination in chief ; they did not lie by, but objected from the time he was offered to them :

" Cessante ratione cessat et ipsa lex," is a maxim which should apply with peculiar force to these cases, in which the discretion of the court is so largely exercised.

Again, it is said, that perchance, if the objection had been taken upon the *voire dire,* the witness might have been released. The objection was taken before the testimony was closed in the case, and the defendants had full time to render the witness competent, had such a course been in accordance with the opinion of the presiding judge.—1 *Phillips on Ev.* p. 132.

The defendants have been in no way prejudiced. The act by which the witness was rendered incompetent was their own deed. They were fully aware of it. The name of the solicitor of record appears on the bond in juxta position with that of the witness. It was not disclosed when the objection was first made to the witness as interested, and after the objection was originally made, the *voire dire* was waived upon the statement of witness and counsel, that the witness had no interest. We again appeal to the discretion of the court if, under circumstances like these, the objection came too late.

Had no objection been made at first, it might have been presumed that the complainants' solicitors were at the time aware of the objection, it being a matter of record. Is it probable that they would have urged an objection, and omitted in their argument to mention a fact, which would have been decisive of the question ?

In support of the above views may be added legal authority. But if, notwithstanding every ineffectual endeavor to exclude a witness on the ground of incompetency, it should afterwards appear incidentally in the course of the trial that the witness is interested, his testimony will be stricken out, and the jury will be instructed wholly to disregard it.—1 *Greenleaf on Ev.* p. 468.

In all these cases the objection is to be considered as though it had come upon the " *voire dire,*" or first objection.—13 *Mass.* 381.

Had this fact been shown to the court upon the first objection made to the competency of the witness, he must have been excluded. The fact having afterwards been discovered, and brought to the notice of the court, it may well be taken as part and parcel of the original motion, being only a continuation or renewal of it. —13 *Mass.* 381.

There was no error in the court's refusal to allow the appeal bond to be amended.

The record of a court cannot be varied.

Though in some instances the record at the same term may be amended, where it is manifest that error has been committed in making up the record, yet can an instance be found in which a motion has been made to the court to alter or expunge from and add to its own record for the convenience of a party whose own act had placed him under the necessity of making the demand ?—5 *Comyns' Dig.* 395 ; *Sal.* 567.

The appeal bond is a matter of record, regularly entered on the minutes of the court, which are signed by the presiding judge. After such signature, they become records of the court, and a sanctity in a legal point of view attaches to them, which the judge himself cannot violate.

At the common law, *the record*, after term passed, could not be amended in the smallest particle, after it was once made up. By the statutes of Jeofails, amendments were allowed in certain cases. But there is neither statute nor common law which allows the judge to *alter* the record, where under no view of the case can such alteration be called *an amendment.*—2 *Irvin's Ab.* pp. 289–90.

By the statute law of Georgia, it is made penal for any judge to "alter" the record. This law has never been considered as repealing the statutes of Jeofails, allowing amendments, but it certainly forbids most positively any "alteration" which does not come under those statutes.—*Princes' Dig.* 638.

The class of cases relied upon by counsel for the motion to substitute, are cases in which bail being witnesses, the party has been allowed to give a new bail bond or deposite the money in court.—1 *Greenleaf Ev.* p. 477.

But the distinction is evident. Bail is but an incident to the case, and a bond or deposite, which relieves the mind of the witness from any bias or interest, may again render him competent.

But the motion in this case was to *alter the appeal bond* by striking out the name of a witness, and substituting another name.

Now, the appeal bond was the ground of the jurisdiction of the court. It is required by law that this bond should be given within four days, or the appeal must be dismissed. Had the name of the witness been stricken out, and another substituted, the bond must have been attested by the clerk as having been signed on the day when the motion was made, nearly one year after the date of the appeal.

Would not such an alteration have necessarily involved a dismissal of the appeal?

Had such a motion been made and overruled, upon error to this court, would not the court have dismissed the appeal, trying the record by the record itself, parol evidence being inadmissible to explain the record?

The presiding judge could not have ordered the bond to be signed by the substituted surety, because

"The appeal must come up regularly from the court below, and so continue. The moment the record is vitiated, the jurisdiction of the court ceases. The appeal can only be had upon certain conditions, and if those conditions are violated or not complied with, there is no appeal. Had the motion in this case been to deposite a fund in court sufficient to have answered all damages and costs, or a counter bond to save harmless, it might have been entertained; but it being a motion to alter or expunge from and add to the record by striking out the name of a security and replacing it by another in an appeal bond, the regularity of which alone gave jurisdiction to the court over the case, it was clearly not error on the part of the judge presiding below, to refuse such an application.—4 *Cowen*, 80, 540,587, 9. 227. 3 *Mason*, 441-5.

The third ground of error assigned is, "that the presiding judge decided, and so charged the jury, that a mortgage is such an instrument as is embraced under the said act (the act of 1818), if made under the circumstances stated in said act to bring it within its operation."

The words of that act are, "Any assignment, transfer, deed or conveyance," coming within the circumstances stated in said act, shall be set aside as null and void.

A mortgage is embraced in the very words of the act.

A mortgage is a conveyance or transfer of real or personal estate, to secure the grantee or assignee the payment of some debt.—9 *Encyclopedia Am. tit. mortgage.*

A mortgage is a conveyance.—4 *Kent Com.* 135, 153; 2 *Cruise's Dig.* p. 80.

It is a transfer.—18 *Law Library;* 18 *Encyclopedia Am. tit. mortgage.*

It is a deed, because it is a writing, sealed and delivered.—2 *Black. Com.* 295.

A mortgage is in effect the old deed of defeasance, which is enumerated by Blackstone among the regular common law *deeds* of conveyance.—5 *Bacon's Ab.* p. 3; 2 *Black. Com.* 327.

"A mortgage is where a party borrows money, and grants him an estate in fee." Under the statute of frauds, this can only be by deed.—2 *Black Com.* 158.

It is spoken of in the statutes of the State as "deed of mortgage." (*Prin. Dig.*

p. 165,) and the same solemnity is required in the attestation as in that of any other deed.—*Prin. Dig.* 166.

It has been so far considered a transfer of the property, that by express statute it has been enacted, that the dower of the widow of the mortgagor should not be barred, unless she consented to the mortgage.—*Prin. Dig.* p. 161.

A mortgage is an assignment.—5 *Bacon's Ab.* p. 6.

The mortgage states, on its face, that it is an indenture, which is a deed of the most solemn kind.—2 *Black. Com. tit.* p. 238.

These authorities prove that a mortgage is within the very letter of the statute.

They are likewise within its spirit. The object of the statute is to prevent persons who are unable to pay their debts, from making any assignment or transfer, deed or conveyance, to any particular creditor, by which other creditors may be excluded or defrauded from their just share in the property so conveyed, assigned or transferred.

A mortgage is the most ready, easy and common method by which this is done. In vain would the Legislature of Georgia have passed this law, if a mortgage is to be excluded. To give the statute this construction, would be to render it as useless to the ends proposed as was the statute' of uses, (27 *Henry VIII.* c. 10,) which is said to have added but three words to the conveyance intended to be abolished.

This construction would add but the defeasance to a deed, and the fraud sought to be prevented would continue in unabated force.

The object of the Legislature seems to have been, to pass a law of equality to creditors, by which, so soon as a debtor became unable to pay his debts, his power over his property, so far as it tended to the injury of any or either of them, was suspended, and he was left only as a trustee of the fund, to pay the creditors in their legal priority then existing, or afterwards to be obtained.

If this creditor can exclude and defraud certain creditors, by giving mortgages of his entire estate to others, is not the law a dead letter?

There is one rule to be borne in mind, in construing this statute. It is "a statute against frauds is to be construed liberally."—1 *Black. Com. n.* p. 88.

"Remedial statutes must be construed according to their spirit; for in giving relief, or in the furtherance or extension of natural right and justice, the judge may safely go beyond even that which existed in the minds of those who framed the law."—1 *Black. Com.* p. 62; *note by Christian.*

The construction that a mortgage is within the statute is supported by able and learned decisions.

Mr. Justice Nott, delivering the opinion of the Court of Appeals in South Carolina, says of a mortgage under this act: "I think, therefore, that the terms of the act are broad enough to embrace the transfer now under consideration, and I am of opinion that the spirit of it requires that it should receive such a construction. —*The Bank of Georgia* vs. *Henry Schultz.*

Judge Johnson, than whom an abler man scarcely sat upon the Supreme Bench, decided that a mortgage was within the act. "We are clearly of opinion, that the deed is expressly within the words of the act, as to the previously existing debt." —*Schultz & Briethaupt* vs. *Bank of the State of Georgia, et. al.*

"It matters not, in my opinion, what the form of the transfer is, or by what apparatus the fraud is perpetrated; the act will condemn it."—*Johnson Ch.*; 1 *Spear's Eq.* 554.

"Whether a mortgage is within the words, assignment or transfer, found in the statute of Georgia, came directly before the Court of Appeals in the case of the Bank of the State of Georgia, against Henry Schultz, in January Term, 1827, in which it was held that mortgages are embraced by them."—1 *Spear's Eq.* 589.

That a mortgage is within the act of 1818, has been decided upon solemn argument on a motion for a new trial in the Eastern circuit.—*G. W. Anderson & Brother* vs. *Wylly, et. al. MSS.*

In the opinion of Chancellor Kent, they are also within the statute.—*Written opinion,* p. 3; *Habersham* vs. *Screven.*

There has been made in the middle Circuit of Georgia, a contrary decision, by Judge Shly.—2 *Part Geo. Dec.* 76.

Of this decision it may be remarked, that it is made with entire ignorance of any decision to this point, with the exception of one of Judge Montgomery's, which it overrules, and which decision sustains the complainants in this case. Taking into consideration that the decision in South Carolina, above cited, and also the one in the Circuit Court, (which arose out of a matter occurring in the very county in which Judge Shly decided, and a matter which attracted great attention,) had been decided, and some of them in printed reports, long anterior to the decisions of Judge Shly, we come to the necessary conclusion that the latter decision must have been hasty, and without that research and attention which alone entitles judicial decisions to respect, where they are not controlling.

The reasoning by which Judge Shly came to the conclusion in his decision, is equally fallacious.

It is in substance, " That the laws of Georgia having given an additional remedy to mortgagors, have thereby entirely changed the nature of the conveyance, admitting that, except by the operations of this statute, a mortgage would be within the act."

This remedy is but cumulative, and there are many circumstances which might induce a party to pursue this course, but it is apprehended that the common law method of a foreclosure might still be used.

If, after condition broken, the mortgagee were to take possession of the property, would ejectment or trover lie by the mortgagor for the property ? Has not the mortgagee the legal title ?

It has been decided that after the sale of the equity of redemption a mortgagee may bring ejectment for the premises.

After the sale of the equity of redemption in Georgia, under the form of our mortgage conveyance, could not the same action be brought? If the mortgagee foreclose, (allowing the statute not to be cumulative,) he must *foreclose* in this way, but is there in that statute any provision that he shall be excluded from his other common law remedies, if he *do not choose to foreclose.*—10 *John.* 481.

Subsequent acts of Parliament in the affirmative, giving new penalties, and instituting new methods of proceeding, do not repeal former methods and penalties ordained by preceding acts of Parliament, without negative words."—*Middleton and wife* vs. *Crofts, in Sunders' Atkins,* pp. 674, 675.

And this statute, being in derogation of the common law method of proceeding, must be construed strictly, and without giving scope to implication.

That such is the ordinary construction, is evidenced by the repealing clause annexed to all statutes.

To the authority of this decision, we oppose those of Judge Montgomery, Judge Henry, and the decision of his Honor in the court below.

" Alia lex Roma, alia Athenis—our appeal is unto Cæsar."

It has been decided that the mortgagee of personal property is the legal owner of property, after condition broken, the equitable estate alone remains in the mortgagor.—8 *John.* 96 ; 2 *Vesey, jr.* 378 ; 1 *McCord. Ch.* 486 ; 6 *John.* 258 ; 9 *Wend.* 80 ; 12 *Wend.* 61 : 1 *Peters,* 441.

As before stated, there may be several reasons which might induce a person to desire a foreclosure, instead of taking the property into his possession. He may have sued upon the note or bond, and wish to sell the mortgaged property, to ascertain the difference between its value and the debt, as until such an ascertainment, he might be enjoined by other creditors from touching other funds; but there is nothing which compels him to foreclose; if he can obtain possession of the personal property, he may retain it, and drive the mortgagor to his bill in equity to redeem. Is he not then a trustee ?

In Ireland the mode of foreclosure is the same as in our State, yet we do not fin'd that the character of the conveyance is altered.—13 *Vesey Rep.* p. 204.

The third ground of error may be best considered by ascertaining the requisites

which must attach to any conveyance, to bring it within the act.    The following are the requisites, as they appear upon the face of the act :

1st. The grantor must be insolvent.

2d. The consideration must be an antecedent debt, that is, to one who was a debtor at the time.

3d. It must be given under circumstances whereby any creditor may be excluded from an equal share or portion of said property.

4th. And that " it be *not* free from a trust for the benefit of the seller, or any person or persons appointed by him, her, or them."

That these instructions of the court to the jury, upon these points, were correct, so far as it went, was not disputed by the defendants' solicitors; but they asked further instruction, which the court refused to give.    That the conveyance was not within the act, unless it was made " under the apprehension and in the expectation of immediately winding up, and with the intent and motive to give a fraudulent preference."

The court committed no error in refusing this charge, and in deciding that the knowledge and intention of the parties did *not effect* the matter.

To sustain this view of the case, we refer to the words of the act itself :

" Any persons unable to pay his, her, or their debts, who shall hereafter make any assignment or transfer," &c. " by which any creditor of the said debtor shall or may be excluded from an equal share or portion *of the* estate so assigned or transferred," " such conveyance shall be null and void."—*Prince's Dig.* 164, 165.

These are the words of the act.    There is nothing in them which requires the party to be under the apprehension and in the expectation of winding up his affairs.

The act speaks of an insolvent, and further qualifies the idea of technical insolvency by defining what the legislature meant as such :  " One unable to pay his debts."

A man may be utterly and hopelessly insolvent, and yet have no intention of winding up his affairs.    He may shut his eyes blindly to his situation, and keep on.    Men seldom set to work to wind up their affairs; it is an office which is usually performed for them by their creditors.

There is nothing in the words of the act which says, " there shall be an intent and motive to give a fraudulent preference."    The word " intent" or the word " preference" does not occur in the preamble or body of the act; it only speaks of a conveyance by which " creditors may be excluded."    It is the fact of exclusion and not the intention of preference which brings a conveyance within the view and operation of this statute, and the absence of all intention of course dispenses with the necessity of knowledge.

Where the words of a statute are clear and distinct, there is no room left to the court for implication.    " Cum inciditur a lege judex transit in legis latonem."

We may make this additional observation : that this being a statute against fraud, is to be construed liberally—construed so as to embrace every conveyance which may fall within its spirit, not to exclude them by adding requisites of which the law makes no mention.

A comparison of this statute with one of a sister State, will show that the legislature did not intend to attach these requisites, or they would have so stated.

" If a debtor, within six months," " being insolvent or in contemplation of insolvency, shall directly or indirectly make any assignment, sale, transfer or conveyance, either absolute or conditional, of any part of his estate, real or personal, intending to give a preference to a pre-existing creditor," " such conveyance shall be void, provided the creditor had reasonable cause to believe such debtor was insolvent."—*Law Reporter, March,* 1846, p. 500.

To such a statute, the argument of the defendants' solicitors would apply.  But are not the words in the statute last quoted, so pregnant with the ideas of knowledge, intention, and preference, expressions omitted in our statute ?  It was un-

Davis et al. *vs.* Anderson et al.

doubtedly in the power of the legislature to have passed the law in this form. But have they done so ?

The solicitors for the defendant contend that in order to bring a conveyance within the act, it must be made " with intent and motive to give a fraudulent preference,"

If such had indeed been the intention of the legislature, they legislated to no purpose; for the case was already provided for at common law, and by statute 13 *Eliz.* ch. 5.—*Schley's Dig.* 215.

A mortgage given on personal property, executed with intent to defraud creditors, is vitiated by the fraud, though executed for a valuable consideration, or to secure an honest debt.—*Law Reporter, March,* 1846, p. 504.

The statute itself evidently goes further. The title of the act speaks " of the injury and exclusion of creditors." The preamble states " excluding or defrauding." The body of the act speaks of " exclusion" of creditors only, and declares such exclusion sufficient to make the deed legally " fraudulent," without reference to intention ; nor does the word " fraud" occur in any part of the body of the act, except in this last peculiar application.

But in addition to this argument upon the law itself, we present the opinions of eminent judges upon this point.

Judges Johnson and Cuyler, in the case of *Schultz* vs. *Briethaupt*, before referred to, in deciding a cause identical in its features with this, say, in speaking of a mortgage :

" It is a transfer of real estate, by which other creditors may be excluded from an equal share of the estate so assigned." And it is a " conveyance, not free from a trust, for the benefit both of the seller and other persons appointed by him."—*Printed Report,* p. 61.

They follow the words of the statute, and attach to the deed only those requisites attached by the statute. They make no mention of preference, intention and fraud. They sat as judges, not as givers of the law. They decided as the statute stood before them. They did not legislate.

Judge Nott, delivering the opinion of the Court of Equity Appeals in South Carolina, says :

" The manifest object of the act throughout, is to prevent a debtor who is unable to pay his debts, from making any transfer of his property to one or more of his creditors, *in exclusion of the rest,* and to effect an equal distribution among all his creditors."—*Printed Decision,* p. 3.

Is not an unintentional act of exclusion as much within the statute as one which is intentional ? The statute draws no distinctions.

If the act can be evaded by apportioning out the property among a few favored creditors, by way of mortgage, to the exclusion of the rest, I think the State of Georgia has legislated in vain upon the subject. *I do not put it on the ground of fraud,* but on the positive provisions of the act; the policy of which is too plain to be mistaken.

Johnson, Chancellor, delivering the opinion of the Court of Appeals in South Carolina, says :

" I am disposed to concede that, upon a strict construction of the statute, if, at the time of the assignment or transfer, the debtor was in truth unable to pay all his debts, the assignment or transfer would be void, although the fact was unknown, both to the debtor and the assignee or transferee."—1 *Spear's Eq. Reports,* p. 559.

In the absence of controlling authority, it is respectfully submitted, that these, the opinions of some of the ablest judges who have ever presided in the Southern States, should have great weight with the court, in deciding this, to them a question it is believed of first impression, and without one contrarient opinion.

It is excepted, also, to the judge's decision, that he allowed the jury to find the mortgage void, although the mortgagor was wound up by executions twelve months after the date of the mortgage.

To this, it may be briefly answered, that the act does not require a person to be

wound up before his transfer shall become void, but only requires insolvency, which the presiding judge charged.

And, more conclusively, although he was wound up by executions one year afterwards, yet the writs upon which those executions were founded, were issued and served upon the mortgagor, prior to the time of his making the mortgage, as will appear, by reference to the record accompanying the exceptions.

It was contended, that the mortgage, came within the proviso, being a deed free from a trust.

Judge Johnson, in the decision above quoted, says that it is not free from a trust.

The doctrine of mortgages, from the beginning, was a doctrine of trust; and almost the whole of the earliest equity-jurisdiction, with regard to mortgages, was based upon this notion.

We trust we have shown, that the statute of this State, allowing a different method of foreclosure, has not altered the substance, as it has not altered the form of this conveyance.

But the proviso speaks of *bona fide* absolute sales. What is meant by this? Clearly, a sale for cash, or consideration then moving, and which consideration stands to the creditors, in the place of the property thus sold?

Can it be said, that a mortgage or deed, by a man in insolvent circumstances, to a creditor, for an antecedent debt, by which other creditors are excluded, comes within the proviso?

If so, the proviso is directly repugnant to the body of the act, and is void.— 1 *Black. Commen.* p. 89.

In all the cases above quoted, the proviso seems to have been construed, as having relation to purchasers other than creditors, and for a present consideration; and would apply where a person, for a valuable consideration, sold his property to any one not a creditor, and still, in such conveyance, limited a trust for himself or others.

The facts of the insolvency of the grantor, and exclusion of creditors, make the conveyance one of *mala fides*, and exclude it from the proviso.

And this latter reasoning applies, even though the court should be inclined to the opinion, that a mortgage is not a deed which involves a trust.

The fourth and last ground of error, is upon the charge of the court to the jury, as to the consideration for which the mortgage was given, under the following state of facts:

In January, 1836, the trustees, defendants, sold to Edward Stiles a tract of land, called Selina, for eight hundred dollars, taking his promissory notes for that sum, secured by a mortgage on the place. Selina was at the time worth eight hundred dollars, but shown, by the testimony, to have deteriorated in value very much in the six years following. In April, 1836, Edward Stiles exchanged Selina with one Stephens; and sold the place taken in exchange to Starr, in the same month, for $800; and in that *month, April*, 1836, *received the purchase-money from Starr*. There was some proof of a promise, from Stiles to Stephens, to relieve the Selina place from the mortgage; but not with the knowledge, or concurrence, of the trustees.

In April, 1842, Edward Stiles being insolvent, and the amount due on the promissory notes having increased from $800 to 1200 by the interest, and Selina having deteriorated in value from $800 to $500, Edward Stiles gave to the trustees a mortgage on *nine negro slaves*, to secure the principal sum, *and all the interest then due*, being an amount one and a half times larger than the sum originally secured, and double the value of the Selina property.

It is stated in the answers, that upon receiving the second mortgage, the trustees cancelled the mortgage they held upon Selina, which had been the property of Stephens, for upwards of six years previously, though upon the face of the mortgage no such consideration appeared.

The judge charged, that though the last mortgage was good for the eight hundred dollars, which was the value of the Selina place exchanged, yet, inasmuch as, it was given to secure not only that, but also four hundred dollars

interest which had accrued, which was over and above the value of the land and mortgage released ; it was, as to the four hundred dollars, without consideration, and void ; and being a statutory deed void in part, it was void altogether.

The only error in the charge of the court, we contend, was that it did not instruct the jury that as between Edward Stiles and the trustees there was no consideration whatsoever then moving.

The mortgage on its face expressed an antecedent consideration, and, being the act and deed of the parties under seal, it was an estopple to them to show any other consideration than the one expressed.

When a deed states a consideration, and does not say for other consideration, no other consideration can be shown.—4 *Cowen*, 427 ; 7 *Johns. Rep.* 341 ; 1 *Vesey*, sr. 127.

If no proof can be heard to show a different consideration for a deed than the one expressed upon its face, the consideration was wholly antecedent, and the judge's charge upon the point greatly in favor of the defendants.

But further, the release of the mortgage accrued to the benefit of Stephens, not Stiles. The Selina tract had belonged to Stephens for six years ; it was his land, not the land of Stiles, which would have been sold, had the mortgage been foreclosed. *There was no evidence before the court that the exchange was accompanied with a warranty of title, and the parol promise of Stiles was such an one as could not be enforced against him in equity, because of the statute of frauds, nor at law, because of the statute of limitation.* It is true, as a general rule, that there is an implied warranty in exchanges, but such was not the case in this instance, because Stephens knew of the mortgage : and the *parol promise of Stiles*, to lift the mortgage, took the place of a warranty. The warranty in exchange is, that if any party is evicted, he has a right to the land given in exchange for his own. This would have restored Stephens' land to him, and there is no evidence that Stiles gave Starr a warranty title.

There was no release to Stiles of any legal obligation, and the release of a moral obligation is not a valuable consideration in law.

If the deed of exchange contained a warranty, it was in the power of the solicitors for the defendant to have produced it. Stephens was examined as a witness by them, and their neglect to prove so material a point indicates with certainty that it has no existence.

The reason why a deed is not within the act which is made for a present valuable consideration is, that the consideration stands to the creditors in the place of the property transferred.

" The money is probably applied to the debts of the creditors, or the debts of some of them."—*Schultz* and *Briethaupt, printed Doc.* p. 61.

Was there any such consideration as this in the case before us. The defendant's witness, Starr, proved that he had paid to Edward Stiles the consideration money for the land taken in exchange in the year 1836. The money was in Stiles' pocket, and probably spent by him long before the debts of the complainants were contracted. It was to *Stiles* a consideration *long past*, and a *present* consideration to *Stephens* only.

But allow the mortgage to be good for the $800 principal, it is assuredly bad for the $400 accrued interest.

The case of Schultz and Briethaupt, before quoted, is directly in point.

The McKinnes' owed the Bank of the State of Georgia $40,000, and, in consideration of a mortgage to be given to secure both sums, the bank advanced in cash to them, $50,000. The mortgage was taken to secure both sums, and the Sixth Circuit Court in the District of Georgia, and the Court of Appeals of South Carolina, decide that, so far as the mortgage was for antecedent consideration, it was void, notwithstanding the then moving consideration of $50,000.—*Printed Decision*, pp 3, 61.

Suppose, in the most favorable point of view, that they had paid Stiles the $800 in cash, and he had appropriated it to the payment of the complaining credit-

ors, and that in consideration of the $800, he had given them a mortgage for $1200, it would under the above decision be void as to the four hundred.

How much stronger is this case against the defendants? They have a lien upon certain property, (admit it to be Stiles' for argument sake,) worth six hundred dollars, and in consideration of a release of this lien, he gives them a mortgage conveyance for $1200 00. Can it be seriously contended that such release is a full moving present consideration for the $1200 00?

Such a decision is a virtual repeal of the law.

A debtor in insolvent circumstances goes to a creditor to whom he owes five thousand dollars, and which creditor has in his possession property of the debtor subject to his retainer of $500 00. The debtor says, release this property, and I will give you a mortgage to secure your antecedent debt of $5000. The property is released, and the mortgage given. Will it be contended that such a release will support the mortgage, and be that valuable moving consideration which the law contemplates? Surely not; and yet, if $500 will not support $5000, neither will $600 support $1200. The principle is identical. The court cannot judge of the relative considerations : there is but one rule which we apprehend can be sustained, either by policy or sound reason.

*" That when a mortgage is given for valuable consideration, the moving to secure a debt which is antecedent, that the mortgage is void for the exact amount by which the antecedent debt exceeds the present consideration."*

This mortgage was therefore void as to the interest; and, being a statutory deed, void in part, was void altogether.—*Schultz* and *Briethaupt* vs. *Bk. State of Geo.* 8 *Johns.* 253 ; 2 *T. R.* 139, 603 ; 5 *Taunton,* 746 ; 8 *T. R.* 641 ; 43 *Law L.* 285 ; 1 *Sand.* 66, *n.* ; *Hobart,* 14 ; *Chitty on Con.* 228-9 ; 1 *Bowell on Con.* 199 ; 1 *Comyns on Con.* 26 ; *Buller's N. P.* 172 ; xliii *Law L.* 285, 33 ; 9 *Law L.* 70 ; 2 *Kent,* 536 ; *Fonblanque Eq.* 205, *n.* ; 1 *Wheaton S. N. P.* 555, 8 ; 15 *Pick.* 167 ; 6 *Hill,* 438 ; 1 *Brock,* 184 ; 13 *Wend.* 53 ; 1 *Hopkins' Ch.* 405.

This point was conceded by counsel for defendants at the time of trial, but seems to have been revived in their exceptions.

### *Statement of the debts and assetts of Stiles, 19th April, 1843.*

| | |
|---|---:|
| N. B. Knapp & Co. $115 with int. and costs, . . . | $141 48 |
| C. C. Thompson $49, with int. and costs, . . . | 69 50 |
| James A. Clifford $209, with int. and costs, . . . | 235 66 |
| Joseph Jones, Charles West and Roswell King, jr., $799 95, with int. from Jan., 1836, . . . | 1208 48 |
| Benj. Stiles $675, int. on $300, . . . . . | 788 00 |
| G. W. Anderson and Brother $1474 26 with int. . | 1611 00 |
| Tuller, Moore & Co. $400, with int. . . . . | 508 30 |
| Price & Mallery to $130, with int. . . . . | 140 00 |
| L. N. Falligant $376 36, with int. . . . . | 481 00 |
| Benj. Stiles ex'ion from Laurens, . . . . | 450 00 |
| Needham McLendon $210, with int. and costs, . . | 250 00 |
| Nathanjel Gay $84, int. and costs, . . . . | 111 60 |
| John Smith $152 50, int. and costs, . . . . | 171 40 |
| Benjamin Stiles, guardian, $808 97, . . . | 808 97 |
| John B. Gaudry $67 37, . . . . . . | 67 37 |
| J. B. Gaudry and J. E. Gaudry, survivors . . . | 37 68 |
| | ——$7077 44 |

### *Assetts as per return.*

| | |
|---|---:|
| One tract of land, 166 acres, in Bryan county, . . | $800 |
| 15 negro slaves, | |
| 9 of the mortgaged slaves sold for . . . . | 1700 |
| 3, included in the other mortgage, sold for . . . | 600 |
| 3, allowing $200 round, . . . . . . | 600 |
| | ——$3700 |

| | |
|---|---:|
| Minus in the world . . . . . . . . | $3377 44 |

WM. LAW, for the plaintiffs in error, in conclusion.

Defendant, Stiles, obtained an advance from complainants, his factors, in 1840, and gave a mortgage on Crow-lane plantation. He had before purchased Selina plantation from the other defendants in the bill, trustees of Mrs. Joseph Stiles and children, for $800, and mortgaged the place to secure the purchase-money.

Crow-lane was proved to be worth, in 1840, about $2,000—the amount of the advance.

In 1836, defendant, Stiles, exchanged Selina for Moonshine plantation : which he sold for $800.

Mr. Joseph C. Stiles (the husband and father of *cestui que trusts*) agreed to have the mortgage cancelled upon receiving a new security. He was then in Kentucky. Upon his arrival here in the spring of 1842, this arrangement was consummated, by giving new mortgage, and was acquiesced in by the trustees.

Defendant, Stiles, was then greatly indebted, and numerous suits a few days before instituted against him. His debts were then about $7,000. His property consisted of about fifteen negroes (mortgaged, as aforesaid, to the trustees, and to B. E. Stiles, guardian, &c.,) and Crow-lane plantation. The complainants having exhausted their mortgage on Crow-lane, seek to avoid the defendant's mortgage, as contrary to the act of 1818.

First inquiry : Is a mortgage within that act ?

That act turns upon the creation of a *trust.* This appears from the causes which led to its passage; and is expressly declared in the act, (3 *Dall.* 267,) a man may sell, *provided no trust.*

What is a mortgage ? It is a sale—conditional, it is true, but absolute on forfeiture of condition.—4 *McCord,* 336 What is the condition ? That mortgagee pay the debt. But it is said to be a *trust* estate. What kind of a trust ? Such an one as is contemplated by the act ? No; it is an equity of redemption—the right of paying the debt, and retaining his property. This equity is at all times open to his creditors. They may redeem. They may levy upon it. These assignments in trust delay and hinder creditors.—2 *Kent,* 535.

Take the case of a general assignment for payment of creditors. A provision for the overplus, after payment of debts, to the assignor, will not invalidate, because such a resulting trust would follow of course, without any stipulation.—2 *Kent,* 536, *n.*

So an absolute conveyance, intended as a security, is but a mortgage, and the equity of redemption would result without any stipulation. There is in neither case any secret trust, and the interest reserved by the mortgage is only what the law gives from the character and nature of the transaction.

What is prohibited ? Assignments and conveyances in trust, by which the title passes absolutely out of the grantor, for the benefit of those appointed in the deed. These conveyances were peculiarly objectionable, because debtors were enabled to force creditors into conditions under the penalty of being excluded. *The distinction is very striking.*

I have been considering this subject in the most favorable aspects to complainant's case. But under our law, what is a mortgage but a mere security for a debt ? —*Judge Schley's Decision,* p. 76.

We have seen in England the estate becomes absolute in mortgagee, upon condition broken. Not so with us. The mortgagor remains the owner until, by judgment of a court, the property is sold. This is expressly provided by statutes in New York and South Carolina.—2 *Paige,* 592 ; *Rives' Eq. Rep.* 383. How, then, shall a mortgage be called a conveyance under the statute, seeing it does not change the ownership, but is a mere security.

2d. But if a mortgage is embraced in our act, then we say—

1st. That at common-law, a man might prefer any creditor ; he might give an assignment or mortgage to secure an antecedent debt, of *any part,* or the *whole* of his property, so there was no fraud ; and he might do this the very night he absconded.

2d. He might do the same thing under 13 *Eliz.* if *bona fide* and on *good* consideration.

3d. Under bankrupt laws, he might secure a particular creditor for *past* or *future* debts ; unless by *deed*, in *contemplation of bankruptcy*, or of *all*. In these cases, the law made it an act of bankruptcy.

Let us look for a moment at the *statute of Elizabeth* to prevent voluntary conveyances in fraud of creditors. The questions have been the *bona fides* of the transaction.

·Badges of fraud—

1st. Continuing possession.

2d. Case of entire estate. From these and the like, secret *trusts* are implied. Mere indebtedness is not enough. There must be fraud.—1 *Story*, 356, 360 ; *New. on Con.* 384–5.

Let us look at bankrupt acts : (1 *Jas.* 1, and 21 *Jas.* 1,) A trader may prefer, if not of all, or under apprehension of impending bankruptcy.—*New.* 282. Indebted means insolvent.—*Ib.* Reason why all won't do under latter acts, and good under *Eliz.* if no fraud.—*New.* 381 ; *Doug.* 92.

The construction of our act cannot be extended beyond bankrupt acts. They seek

1st. Equality ;

2d. Distribution by law ;

3d. Protection of bankrupt from future liability.

Ours seek only equality. Indebted, in our act, means insolvency.—*New.* 384–5. What is technical insolvency ?—1 *Peters*, 438–9. When, then, is a mortgage embraced under our act ?· By an *insolvent*, in *contemplation* of *impending ruin*, on the *eve* of bankruptcy, with the intent to give a fraudulent preference. · And further, it must be voluntary.—*Doug.* 88, 92 ; 1 *Wash. Cir. C. Rep.* 34–5. If the creditor pushes, the fraudulent *intent* is negatived. Let us test these principles by the facts of this case.

If the defendants had taken no mortgage for Selina, they would have had a lien for unpaid purchase-money. But they had a mortgage. They gave a good present consideration for the new mortgage. $800 went to Stiles' creditors. We are in a court of equity.—1 *Story*, 522 ; 20 *John.* 637 ; 4 *Paige*, 508. Specific lien always preferred to general.—*Story* 402–3, *n.* 1 ; 3 *Dess.* 74 ; 1 *Paige*, 130 ; 2 *ib.* 590, 266. A court of equity may displace a judgment, where an equitable claim against the premises.

Who has the superior equity ?

But where the equities are equal, the maxim is, *qui priori est in tempore, potior est in jure.*—*Story*, 400.

*By the Court*—WARNER, Judge.

The complainants in the court below filed their bill for the purpose of setting aside a mortgage executed by Edward Stiles to Joseph Jones, Charles West, and Roswell King, jun., trustees of Caroline Clifford Stiles, on the ground that the said mortgage was fraudulent, within the provisions of the act of 19th December, 1818, as against creditors. The complainants are judgment creditors of Edward Stiles ; their judgment having been obtained *subsequent* to the date of the mortgage. On the trial of the cause, the defendants in the court below, offered to intro·duce Benjamin Edward Stiles as a witness, who was objected to, on the ground that he was security for the defendants on their appeal bond, and therefore interested. The defendants' solicitors then moved the court to permit them to substitute another security on the bond, in the place of the witness, which motion the presiding judge refused : Whereupon the defendants excepted. We are of the opinion that the court below ought

to have permitted the defendants to have substituted another security in the place of the witness, for the advancement of justice ; the motion for substitution being made by the parties for their benefit, they could not take advantage of it ; and an order entered on the minutes of the court, stating the facts, would make the record sufficiently intelligible. It would not, as is supposed, be giving a *new bond ;* the appeal was entered according to law, and security given at the time, who continues security up to the time the new security is substituted in his place. Nothing is more common in our courts, when the original security on an appeal bond becomes insolvent, pending the appeal, than to require new security to be given ; the court passing an order for that purpose. The motion to substitute another security in the place of the witness ought, in our judgment, to have been allowed ; and there was error on the part of the court in overruling the motion. In the case of *Eastman* and *Philbrick* vs. *McAlpin*, decided during the present term, (*page* 157,) we held that a debtor, in insolvent circumstances, might make an absolute *bona fide* conveyance of his property to a creditor, in payment of a *bona fide* pre-existing debt ; provided there was no trust reserved for the benefit of the seller, without such conveyance being obnoxious to the act of 1818. But it has been ably and ingeniously argued, in this case, that inasmuch as the mortgagee is a trustee for the mortgagor, to the extent of the equity of redemption, such a trust is created, as would bring a mortgage conveyance within the statute. That a mortgage is such a conveyance, as would be obnoxious to the provisions of the act of 1818, provided it was used as an instrument of fraud, for the purpose of securing to the mortgagor a *secret* trust, or benefit, within the intent and meaning of that act, we do not doubt ; but that a mortgage executed by a debtor in insolvent circumstances to a creditor, to secure the payment of a *bona fide* pre-existing debt is *per se* fraudulent as against creditors, within the meaning of the act of 1818, we do not admit. We have already decided that the debtor can make an *absolute* sale of his property to a creditor, in payment of a *bona fide* pre-existing debt. If he can make an absolute sale, surely he can pledge it, or create a lien upon it, as a *security* for a pre-existing debt.

A mortgage in this State is nothing more than a *security* for the payment of the debt ; and the title to the mortgaged property remains in the mortgagor until foreclosure and sale, in the manner pointed out by statute. It is true, the mortgagor is entitled to the equity of redemption after the debt is paid ; and the clause in this mortgage which stipulates that the surplus, after paying the principal debts, interests and costs, shall be refunded to the mortgagor, confers no other, or greater privilege than the law confers upon him. The law gives him the right to the surplus of the proceeds of the mortgaged property when sold, after foreclosure, over and above the principal debt and interest, which the mortgage was given to secure, and the costs of such foreclosure and sale.

We have said, under our law, the *legal title* to the mortgaged property remained in the mortgagor until after foreclosure and sale. The judgment creditor, in this case, could have levied his execution upon the mortgaged property, and sold it, and the purchaser would have acquired the legal title, subject to the incumbrance of the mortgage. The fundamental error in the argument of the counsel for the judgment creditor,

13

is, in supposing the legal title to the mortgaged property is in the mortgagee after condition broken, and that he holds it in trust for the mortgagor ; at least so far as the equity of redemption is concerned. The fact that the legal title to the mortgaged property remains in the mortgagor, until after foreclosure and sale, cuts off, and destroys all foundation for the idea there is any such trust existing between the mortgagee and mortgagor as was contemplated by the act of 1818. The record in this case discloses that in 1836, the plaintiffs in error took a mortgage on a tract of land called Selina, to secure the payment of a debt due by Edward Stiles, the mortgagor, for $800 00. At the time this mortgage was executed, it is admitted the mortgagor was *solvent*. Afterwards, this tract of land was sold by Edward Stiles to Stephens, and for the purpose of raising the incumbrance, so as to make Stephens a good title, a new mortgage was executed in 1842, on the negroes, to secure the payment of the $800 00 with the accruing interest thereon. When this last mortgage was executed, the mortgagor was in failing circumstances. The debt which the mortgage was executed to secure, it is admitted, was a *bona fide* indebtedness. The court below instructed the jury, this latter mortgage, given to secure the payment of the $800 00 with the accruing interest thereon, was within the statute of 1818, so far as the interest was concerned ; and being void in part, it was void altogether. We are of the opinion a debtor in insolvent circumstances, has the right to execute a mortgage to a creditor, to secure the payment of a *bona fide* pre-existing debt ; and that the execution of such mortgage would not *per se* be fraudulent as against creditors, within the intent and meaning of the act of 1818. That act was directed against conveyances made by debtors to creditors, *in trust for the benefit of the seller, or mortgagor,* whether secret or otherwise ; but was not intended to prohibit a debtor from making a *bona fide* sale of his property to a creditor, or to secure the payment of a *bona fide* debt by mortgage on his property, *free from any trust for the benefit of the seller or mortgagor.* Under our law of mortgage, there is not such a trust existing between the mortgagee and mortgagor, as will *per se* bring it within the provisions of the act. We are, therefore, of the opinion, there was error in the charge of the court, in deciding this mortgage came within the provisions of the act of 1818. Let the judgment of the court below be reversed, and a new trial granted.